IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

KERI C.,[1]

Plaintiff,

vs.

COMMISSIONER OF SOCIAL SECURITY,[2]

Defendant.

Case No. 3:17-cv-01368-AA
**OPINION AND ORDER**

AIKEN, Judge:

Plaintiff Keri C. ("plaintiff") brings this action pursuant to the Social Security Act ("Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member(s).

[2] Nancy A. Berryhill's term as the Acting Commissioner of the Social Security Administration (SSA) ended on November 17, 2017, and a new Commissioner has not been appointed. The official title of the head of the SSA is the "Commissioner of Social Security." 42 U.S.C. § 902(a)(1). A "public officer who sues or is sued in an official capacity may be designated by official title rather than by name." Fed. R. Civ. P. 17(d). This Court, therefore, refers to defendant only as Commissioner of Social Security.

PAGE 1 – OPINION AND ORDER

Social Security ("Commissioner"). The Commissioner denied plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. For the reasons set forth below, the Commissioner's decision is affirmed.

## BACKGROUND

On May 20, 2014, plaintiff filed an application for DIB and SSI that alleged disability since December 31, 2007. Plaintiff based her request for benefits on grand mal seizures, heart surgery, thyroid disease, and high blood pressure. The application was denied initially and again upon reconsideration. Following a hearing, an Administrative Law Judge ("ALJ") found plaintiff not disabled in a written decision dated September 20, 2016. The Appeals Council denied review, and plaintiff subsequently filed a complaint in this Court.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision so long as 1) it is based on proper legal standards and 2) its findings are supported by substantial evidence. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). The district court reviews the record as a whole, and must weigh both evidence that supports and evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). If evidence presents the possibility for multiple interpretations and the Commissioner's decision is rational, the decision must be affirmed because "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## COMMISSIONER'S DECISION

The initial burden of proof rests upon plaintiff to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a)(4); *id.* § 416.920(a)(4). At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since her alleged onset date of March 13, 2013. Tr. 20; 20 C.F.R. §§ 404.1520(a)(4)(i), (b); *id.* §§ 416.920(a)(4)(i), (b). At step two, the ALJ found that plaintiff had the following severe impairments: seizure disorder, aortic valve stenosis, and kidney cancer. Tr. 20; 20 C.F.R. §§ 404.1520(a)(4)(ii), (c); *id.* §§ 416.920(a)(4)(ii), (c). At step three, the ALJ found that plaintiff's impairments, whether considered singly or in combination, did not meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. Tr. 21; 20 C.F.R. §§ 404.1520(a)(4)(iii), (d); *id.* §§ 416.920(a)(4)(iii), (d).

The ALJ found plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) and § 416.967(a) except that plaintiff could never climb ladders, ropes, or scaffolds; could only occasionally climb ramps and stairs; and could not have any exposure to hazards such as moving mechanical parts, unprotected heights, or operating a motor vehicle. Tr. 21; 20 C.F.R. §§ 404.1520(a)(4)(iv), (f); *id.* §§ 416.920(a)(4)(iv), (f).

At step five, the ALJ found plaintiff could perform several jobs existing in significant numbers in the national economy. Tr. 26–27; 20 C.F.R. §§ 404.1520(a)(4)(v), (g); *id.* §§ 416.920(a)(4)(v), (g). The ALJ based this decision on plaintiff's age, education, work experience, and RFC, and determined that plaintiff could have performed the requirements of

occupations like the following: document clerk, telemarketer, and appointment clerk. Tr. 26–27. Accordingly, the ALJ found plaintiff not disabled and denied her application for benefits.

## DISCUSSION

Plaintiff alleges that the ALJ erred by (1) discounting plaintiff's testimony about the severity of her symptoms, (2) rejecting the medical opinions of Dr. Finch and Nurse Practitioner Gibson, (3) rejecting the lay witness testimony of plaintiff's friends Melissa G. and Charla B., and (4) improperly assessing the RFC. I address each argument in turn.

I. *Plaintiff's Symptom Testimony*

Plaintiff argues the ALJ failed to provide adequate reasons under the "clear and convincing" standard to discredit plaintiff's testimony. *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014). Defendant argues the ALJ's disregard for the testimony is supported by substantial evidence and should be affirmed.

The Ninth Circuit applies a two-step approach when reviewing the ALJ's treatment of a plaintiff's symptom testimony. First, the ALJ evaluates "whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 1014 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)) (internal quotation marks omitted). Second, "[i]f the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of [the] symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* at 1014–15 (internal quotation marks omitted).

In the present case, plaintiff alleged that she was unable to work due to seizures. Tr. 44. She reported that although she had not experienced a grand mal seizure in about a year, she

experienced "little seizures" about four times per month. Tr. 44–45. She explained that during the little seizures she became numb from her lips to her toes on the left side of her body and she experienced "a lot of confusion." Tr. 44. She noted that the little seizures lasted, on average, seven to fifteen minutes and it would take "[a]t least a half hour" for her to return to normal after the seizure had passed. Tr. 45. She also reported that the seizure medications made her feel "extremely tired." *Id.* With regard to her kidney cancer, plaintiff testified that she was "cancer free." Tr. 46.

Ultimately, the ALJ found that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with medical evidence and other evidence in the record." Tr. 22. The ALJ did not find, nor does defendant argue, that plaintiff malingered. Given these facts, the ALJ was required to support the rejection of plaintiff's symptom testimony with specific, clear and convincing reasons.

The ALJ rejected plaintiff's symptom testimony for several reasons, including lack of medical evidence, non-compliance with medication, and plaintiff's activities of daily living.

A. *Lack of Medical Evidence*

The ALJ noted long periods between plaintiff's seizures. Tr. 22–24. Plaintiff asserts that during those allegedly "seizure free" periods, plaintiff was experiencing episodes that were later understood to be seizures. The episodes were not diagnosed as seizures until late 2015. Tr. 1297. Imaging revealed scarring in plaintiff's brain that was evidence of a past stroke. *Id.* Dr. Finch concluded that such scarring was likely the cause of plaintiff's seizures. *Id.* The ALJ found that there are "no objective findings consistent with her reports of 'little seizures[.]'" Tr. 24–25. Although it is clear from the record that plaintiff was experiencing "little seizures" the record does not support her assertion that the little seizures lasted on average seven to fifteen

PAGE 5 – OPINION AND ORDER

minutes and that she needed 30 minutes to recover after the seizure ended. A review of her seizure journal reflects that her seizures lasted on average five minutes. Tr. 261–63. Moreover, the treatment notes showed that some of her seizures lasted less than a minute or for only "a few seconds." Tr. 389, 572, 746. The treatment notes also indicated that it took her much less than 30 minutes to recover from the seizures. Tr. 389, 746. In fact, in October 2013, plaintiff reported that over the past six months she had been experiencing "occasional absence spells consisting of staring with numbness of the left foot and face for a few seconds followed by a few minutes of foggy thinking." Tr. 746. The treatment notes do not reflect that the little seizures lasted seven to fifteen minutes or that she needed 30 minutes to recover after experiencing a little seizure.

Plaintiff argues that the ALJ failed to account for plaintiff's fluctuating symptoms. She asserts that her bad days occurred frequently and on those days she was unable to work. Although the record reflects that plaintiff experienced little seizures approximately four times per month, the record does not support plaintiff's contention that on those days she was unable to work. As discussed above, the seizures on average lasted for five minutes and her treatment notes indicate that she needed only a few minutes to recover. Plaintiff's treatment notes do not indicate that on days where she experienced a little seizure, she was unable to work. Accordingly, the ALJ properly discounted plaintiff's symptom testimony regarding the severity of her little seizures.

B. *Activities of Daily Living*

The ALJ additionally found that plaintiff's activities of daily living undermined her symptom testimony. The ALJ found that the "record also indicates that [plaintiff] regularly engaged in a broad range of activities unrestrained by her impairments. These included driving a

car, readying her children for school every day, cooking dinner, weeding, doing laundry, grocery shopping, and socializing with relatives and friends." Tr. 24.

A claimant's activities of daily living can be used to discredit a claimant in two ways: either the activities can contradict the claimant's other testimony, or the activities can meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). To properly discredit a claimant on the basis that her activities contradict her testimony, "[t]he ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)). Here, the ALJ never indicated which symptom testimony was contradicted by plaintiff's testimony.

Because the ALJ failed to identify how any of plaintiff's activities contradicted any of her testimony, the Court must consider whether plaintiff's activities meet a threshold for transferable work skills. *Orn*, 495 F.3d at 639. "[D]aily activities may be grounds for an adverse credibility finding 'if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.'" *Orn*, 495 F.3d at 639 (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). Even if driving, shopping, weeding, getting her children ready for school, and doing laundry could be considered "transferable to a work setting," there is nothing in the record to indicate that plaintiff spends a "substantial part of [her] day engaged" in those activities. Indeed, the record indicates the opposite, considering that she only goes shopping one or two times per week, she only weeds her garden sometimes, she spends only 30 minutes per day cooking, and she spends only 20 to 45 minutes per day doing laundry. Tr. 51, 227–28. Therefore, plaintiff's activities are not a clear and convincing reason to discount her subjective symptom testimony.

The Commissioner argues that plaintiff's statements are inconsistent with her activities to the extent those activities contradict claims of a totally debilitating impairment. However, the Commissioner misconstrues *Molina*, which merely stands for the proposition that there will be an inconsistent statement where a claimant alleges a totally debilitating impairment, but the claimant's activities "contradict [that] claim[] of a total disability." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012). Here, unlike in *Molina*, plaintiff has not alleged a totally debilitating impairment. *Id.* Rather, plaintiff has alleged that her symptoms are intermittent. As such, plaintiff's activities are not inconsistent with her testimony.

C. *Non-compliance with Medication*

The ALJ found that "[w]ith the use of her medications as prescribed, [plaintiff] had remained seizure free for a year; it was only when she elected to not take her medications as prescribed that she had another episode[.]" Tr. 23. If a claimant fails to follow the prescribed treatment without an acceptable reason, the Commissioner "will not find [the claimant] disabled." 20 C.F.R. §§ 404.1530(b); *id.* 416.930(b).

In May 2014, plaintiff reported that she stopped taking Lamictal and four days later she was hospitalized for seizures. Tr. 496, 569. Dr. Rothberger noted that plaintiff "had been adjusting her seizure medications and in fact had significantly decreased her dose of Lamictal prior to the onset of the seizures." Tr. 496. He also noted that plaintiff had also stopped taking her Keppra prescription. *Id.* Dr. Finch suspected that plaintiff's seizures occurred because plaintiff decreased her Lamictal. Tr. 514. When plaintiff was hospitalized with seizures in July 2014, she admitted that she had not been compliant with her medications. Tr. 386. Dr. Egan, on multiple occasions, noted his suspicions that plaintiff was not taking her medications. Tr. 786, 792–93.

Plaintiff alleges that even if she had been compliant she would not have been able to work. Pl.'s Brief at 13 (citing SSR 82-59). Plaintiff explained that even when taking her medications she continued to have uncontrolled seizures. Pl.'s Brief at 14 (citing Tr. 1324–25). Although plaintiff did continue to have small seizures even when taking her medications, as discussed above, those seizures only occurred about four times per month and lasted for only about five minutes. As such, plaintiff's assertion that the intermittent small seizures rendered her unable to work is not supported by the record.

Plaintiff also argues that she had a legitimate reason for non-compliance, asserting that she reduced her medication because she understood that her "valvular function was likely the culprit behind her seizures and that surgery would 'fix' her problem." Pl.'s Brief at 13 (citing Tr. 746). Plaintiff argues that Keppra and Vimpat caused irritability and mental stress issues and that Dilantin caused memory loss and sedation. Tr. 783, 1274. Dr. Finch reduced plaintiff's Dilantin dosage due to plaintiff's complaints; however, the record reflects that even on a reduced dosage plaintiff was not compliant. Tr. 786. Plaintiff's Dilantin levels were often noted to be low and her providers noted that she was non-compliant. Tr. 389, 549, 786, 791, 1087, 1274, 1288, 1297, 1299, 1305, 1336, 1338. Subsequent treatment notes reflect that when her Dilantin dosage was increased her seizures were controlled, without further side effects. Tr. 1299, 1306. Even assuming *arguendo* that some of plaintiff's noncompliance was legitimate, her explanations do not fully account for the numerous occasions in which she failed to take her medications. Therefore, the ALJ's findings were supported by substantial evidence.

Finally, plaintiff asserts that the ALJ was required to demonstrate by clear and convincing evidence that plaintiff did not have a legitimate reason for stopping her medication and that her ability to work would be restored by the treatment if she had been compliant. Pl.'s

Reply at 5. However, plaintiff mischaracterizes the clear and convincing standard. The ALJ is required to provide clear and convincing reasons for discounting plaintiff's testimony. Non-compliance with treatment is a clear and convincing reason. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (holding that an ALJ may reject a claimant's subjective symptom testimony based on an "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment"). The ALJ's factual findings in support of the reason, need only be supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Berry*, 622 F.3d at 1231. Accordingly, plaintiff's argument fails.

Although I do not find plaintiff's activities of daily living to be a clear and convincing reason for rejecting plaintiff's symptom testimony, this error is harmless because the lack of objective evidence and plaintiff's non-compliance with treatment constitute clear and convincing reasons to discredit plaintiff's symptom testimony. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (the ALJ's overall credibility decision may be upheld even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld.) In sum, the ALJ provided clear and convincing reasons to discount plaintiff's symptom testimony.

II. *Medical Opinion Evidence*

Plaintiff argues that the ALJ improperly rejected the opinions of Dr. Finch and Nurse Practitioner ("NP") Gibson. There are three types of medical opinions that have been categorized in Social Security disability cases: those of treating, examining, and reviewing physicians. *Holohan v. Massanari*, 246 F.3d 1195, 1201–02 (9th Cir. 2001). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id.* at 1202. Where there is a conflict between two medical opinions, the ALJ may rely on the medical

PAGE 10 – OPINION AND ORDER

opinion of a non-treating doctor instead of the contrary opinion of a treating doctor only if the ALJ provides "specific and legitimate" reasons supported by substantial evidence in the record. *Id.* at 1202. Medical opinions may address both the nature of the plaintiff's limitations and the ultimate issue of disability, *i.e.*, whether the plaintiff is capable of any work, given her limitations. *Id.* Although the ultimate decision regarding disability is reserved to the Commissioner, the rules governing consideration of medical opinions apply with equal force to opinions on the ultimate issue of disability. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).

Non-acceptable medical sources are commonly categorized as "other sources." *Molina*, 674 F.3d at 1111. Because nurse practitioners are defined as "other sources," they are not acceptable medical sources, and are thus entitled to lesser deference. 20 C.F.R. § 404.1513(d) (2013); *Moon v. Colvin*, 139 F. Supp. 3d 1211, 1222 (D. Or. 2015). An ALJ may discount testimony from other sources if the ALJ gives germane reasons for doing so. *Molina*, 674 F.3d at 1111. Germane reasons to discount opinions include inconsistency with an opinion provided by an acceptable medical source and internal inconsistencies within the opinion. *Robinson v. Berryhill*, 690 Fed.Appx. 520, 524 (9th Cir. 2017); *see Molina*, 674 F.3d at 1111–12.

"The ALJ is responsible for resolving conflicts in the medical record." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). "Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). "[T]he consistency of the medical opinion with the record as a whole" is a relevant consideration in weighing competing evidence. *Orn*, 495 F.3d at 631.

A. *Treating Physician Clyde Finch, M.D.*

Dr. Finch treated plaintiff every few months over the course of two years. Tr. 1267. On May 23, 2016, Dr. Finch filled out a function report. Tr. 1267–71. Dr. Finch diagnosed plaintiff with post-stroke seizures. Tr. 1267. He opined that plaintiff's health problems would worsen if she worked full time. Tr. 1268. He also concluded that plaintiff could stand for less than two hours per day. Tr. 1269. Dr. Finch opined that plaintiff could not perform any postural activities, could never climb stairs, and could not lift anything. Tr. 1270. Dr. Finch determined that plaintiff would miss four or more days of work per month. Tr. 1271.

The ALJ found that the limitations opined by Dr. Finch, including that she could never lift any weight and that she could not perform any postural activities were excessive and inconsistent with the record. Tr. 25. The ALJ cited Dr. Finch's own normal findings throughout a number of appointments as inconsistent with the excessive limitations. *Id.* Dr. Finch and other providers regularly found that plaintiff's strength and muscle tone were normal and that her gait and coordination were also normal. Tr. 671, 702, 747, 784, 786, 788–89, 792, 1086, 1220, 1233, 1236, 1244, 1278–79, 1286, 1294, 1303–04, 1312, 1320. These clinical observations do not support Dr. Finch's conclusion that plaintiff could not lift anything or perform any postural activities. Accordingly, the ALJ's finding that Dr. Finch's conclusions were excessive was supported by substantial evidence.

Plaintiff argues that Dr. Finch's treatment notes showed that plaintiff was having difficulty with balance, fatigue, excessive sleepiness, blurred vision, decreased hearing, seizures, tingling, numbness and excessive thirst. Tr. 1324, 1329. However, plaintiff only cites two instances, in contrast to the numerous appointments with normal findings discussed above. Moreover, if the ALJ's interpretation of the evidence is rational, it is immaterial that the

evidence may be "susceptible [of] more than one rational interpretation." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), *citing Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984). Here, the ALJ's interpretation of the evidence was rational.

Plaintiff also argues that the ALJ relied on a treatment note in which Dr. Finch stated that he was glad plaintiff had not had another seizure. Tr. 542. Plaintiff asserts that this treatment note was written prior to 2015 when plaintiff's records revealed that her episodes of altered awareness were seizures caused by brain scarring. Tr. 1297. Nevertheless, the record reflects that two weeks prior to her appointment with Dr. Finch, plaintiff's episodes had already been recognized as "ongoing partial seizures" and Dr. Finch contemporaneously made specific reference to the "ongoing partial seizures" in a note that he sent to NP Gibson. Tr. 508–09, 542. As such, Dr. Finch was aware that plaintiff's episodes were partial seizures at that time. Accordingly, the ALJ properly relied on Dr. Finch's statement.

C.   *Treating Nurse Practitioner Mary Gibson, N.P.*

NP Gibson treated plaintiff monthly since 2010. Tr. 1254. On May 19, 2016, NP Gibson filled out a function report. Tr. 1254-58. She opined that plaintiff's condition would worsen if she worked full time. Tr. 1255. She also determined that plaintiff was not capable of performing even a low-stress job and she concluded that plaintiff would miss work four or more times per month. Tr. 1255, 1258.

The ALJ gave "little weight" to NP Gibson's function report, finding that the limitations to low-stress jobs and requiring position changes every two hours were not adequately explained. Tr. 25. The ALJ also found that NP Gibson's determination that plaintiff would miss four days of work per month was not sufficiently explained and was not supported by the record. Tr. 25. Plaintiff notes that NP Gibson had been treating plaintiff monthly since 2010 and NP Gibson's

conclusions were supported by Dr. Finch's opinion. However, as discussed above, Dr. Finch's opinion was properly rejected. Moreover, regardless of whether NP Gibson had been treating plaintiff since 2010, she was still required to explain her findings. Plaintiff has not argued that NP Gibson provided sufficient explanation.

Plaintiff also argues that NP Gibson's determination that plaintiff could not perform even a low-stress job was supported by the fact that stress could trigger seizures. Tr. 716. At one appointment plaintiff was provided with written materials that recommended avoiding things that may make her more likely to have a seizure, which could include "lack of sleep, alcohol or drug use, stress, or not eating." Tr. 716. Although plaintiff's friend, Melissa G., noted that the more stressed plaintiff became the more likely she was to experience a seizure, none of plaintiff's treating providers indicated that plaintiff's seizures were related to stress. Moreover, a low-stress job would only expose plaintiff to a small amount of stress and NP Gibson did not explain why plaintiff was incapable of even a low-stress job. Therefore, in finding that NP Gibson's function report was not adequately explained or supported by objective evidence, the ALJ provided germane reasons for rejecting the limitations.

III. *Lay Witness Testimony*

Plaintiff alleges that the ALJ improperly rejected the lay witness testimony of her friends Melissa G. and Charla B. Lay witness testimony regarding the severity of a claimant's symptoms or how an impairment affects a claimant's ability to work is competent evidence that an ALJ must take into account. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). In order to reject such testimony, an ALJ must provide "reasons that are germane to each witness." *Rounds v. Comm'r*, 807 F.3d 996, 1007 (9th Cir. 2015) (quoting *Molina*, 674 F.3d at 1114; (remaining citation omitted)). Further, the reasons provided must also be "specific." *Taylor v.*

*Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011) (citing *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009)). However, where the ALJ has provided clear and convincing reasons for rejecting the claimant's symptom testimony, and the lay witness has not described limitations beyond those alleged by the claimant, the ALJ's failure to provide germane reasons for rejecting lay testimony is harmless error. *Molina*, 674 F.3d at 1121–22.

The ALJ addressed both lay witnesses together, and gave them "little weight" finding that they were "inconsistent with the medical evidence of record and describe[d] symptoms more frequent and of a greater intensity than the [plaintiff's] treatment records." Tr. 25. The Commissioner argues that the ALJ was not required to address the "specific inconsistencies in her discussion of the lay witness statements." Def.'s Brief at 11. Rather, the Commissioner asserts, the ALJ was only required to cite "arguably germane reasons" for dismissing lay witness testimony. Def.'s Brief at 11 (citing *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001)). While the court in *Lewis* found that "arguably germane reasons" were sufficient, more recent cases have made clear not only that the reasons provided must be germane, but also that the reasons must be specific. *Taylor*, 659 F.3d at 1234; *Bruce*, 557 F.3d at 1115; *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006). Here, the ALJ's reason was vague. Accordingly, the ALJ erred in failing to provide legally sufficient reasons for rejecting the testimony of both witnesses. *See Taylor*, 659 F.3d at 1234.

The Commissioner next argues that even if the ALJ erred in considering the lay witness testimony, such error was harmless. Where the ALJ has provided clear and convincing reasons for rejecting the claimant's symptom testimony, and the lay witness has not described limitations beyond those alleged by the claimant, the ALJ's failure to provide germane reasons for rejecting lay testimony is harmless. *Molina*, 674 F.3d at 1121–22. Here the ALJ has provided clear and

convincing reasons for rejecting plaintiff's subjective symptom testimony and the lay witnesses did not describe limitations beyond those alleged by plaintiff. Therefore, the ALJ's error in rejecting the lay witness testimony was harmless.

IV. *RFC*

Plaintiff alleges that the ALJ's RFC findings were legally deficient because the ALJ failed to assess whether plaintiff is capable of working on a "regular and continuing basis" as required by SSR 96-8p. Pursuant to SSR 96-8p, an RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p. In formulating the RFC, the ALJ assessed plaintiff's ability to sustain work activities and was not required to recite the specific words "regular and continuing basis."

Plaintiff cites *Reddick v. Chater* for the proposition that a "failure to assess a claimant's ability to perform sustained work activity constitutes error." Pl.'s Brief at 18 (citing *Reddick*, 157 F.3d at 724). However, in *Reddick*, the court held that the ALJ erred because the claimant suffered from chronic fatigue syndrome and the ALJ "failed to account for the effects of fatigue on [the claimant's] ability to function in the workplace." 157 F.3d at 724–25. Notably, the ALJ improperly rejected the opinions of two physicians who had diagnosed the plaintiff's chronic fatigue syndrome. *Id.* at 725–27. Here, as discussed above, the ALJ properly assessed the medical opinion evidence. Although there is evidence that plaintiff suffered from fatigue to some extent, the ALJ explicitly noted that she accounted for plaintiff's fatigue "by limiting her to the sedentary exertional level." Tr. 25. Notably, plaintiff rarely presented with complaints of fatigue, and regularly reported that she was not suffering from fatigue. Tr. 578, 605, 766, 797, 1085, 1228, 1240.

PAGE 16 – OPINION AND ORDER

Plaintiff also argues that she was not capable of working on a "regular and continuing basis" because she suffered from weakness, constant pain, confusion, memory loss, and carrying restrictions. Despite plaintiff's assertion that she suffered from weakness, the record reflects that she consistently displayed normal strength and muscle tone. Tr. 671, 702, 747, 784, 786, 788, 792, 1086, 1220, 1233, 1236, 1244, 1278–79, 1286, 1294, 1303–04, 1312, 1320. With regard to plaintiff's confusion and memory loss, those symptoms occurred infrequently, and were short-lived. Tr. 261–63, 746. Moreover, the carrying restrictions were assessed by medical providers and lay witnesses whose opinions were properly rejected. Tr. 238, 1270. Finally, although plaintiff at times reported pain, in general she reported pain due to acute conditions, such as chest pain related to stenosis and abdominal pain related to appendicitis. Those acute conditions, however, have resolved. Therefore, plaintiff's allegation that she suffered from "constant pain" is unsupported by the record.

Plaintiff also contends that the RFC findings were not supported by substantial evidence because the ALJ failed to account for all of plaintiff's impairments. Nevertheless, the ALJ is not required to include in the RFC any limitations that have been properly discounted. *Batson*, 359 F.3d at 1197. The limitations that plaintiff contends were unaccounted for were derived from plaintiff's testimony, the lay witness testimony, and the medical opinions of Dr. Finch and NP Gibson; however, the ALJ properly rejected each of those sources. Accordingly, the ALJ's assessment of plaintiff's RFC was proper.

///

///

///

///

## CONCLUSION

The Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

Dated this 10th day of October 2018.

/s/ Ann Aiken
Ann Aiken
United States District Judge